## NEHEMIAH A. LEONARD *vs.* ALBERT MORGAN & another.

Rescission of a contract to convey land on a certain day on the payment of a certain portion of the price cannot be inferred from the refusal of the obligee on that day, after being in possession of the land for a year under the contract, to pay interest claimed by the obligor but denied by the obligee to be due under the contract, and the consequent refusal of the obligor to convey; if the obligee continues in possession under the con- tract two years longer without objection of the obligor; although the obligor then enters and expels the obligee for nonpayment of another instalment of the purchase money.

ACTION OF CONTRACT by the assignee in insolvency of Daniel D. Warren to recover back the sum of $10,000 paid by Warren to the defendants, in four instalments, under a sealed contract executed on the 11th of October 1848, whereby the defendants agreed to convey to Warren the American House in Springfield, with the furniture and fixtures therein, on the 1st of January 1850, and to give him possession thereof on the 1st of January 1849; and Warren agreed to pay them therefor the sum of $30,000 in nine instalments: $5,000 on the 1st of January, $1,250 on the 1st of April and $1,250 on the 1st of July 1849, $2,500 on the 1st of January 1850, and the remainder in five

equal annual instalments, and to give his notes for the several instalments, secured by mortgage of the premises, " the notes to be made payable with interest annually."

Warren went into possession under this contract, and made leases of the estate, and paid the first four instalments, and on the 1st of January 1850 demanded a conveyance of the premises, which the defendants refused to make, claiming one year's interest on the instalments payable after that date, as called for by the contract, and to be paid by Warren before he could demand a conveyance. Warren did not pay or offer to pay such interest, and denied that any interest was then due under the contract. In February and May 1851 Warren paid the defendants $1,100 on account of the purchase of the American House. Warren's tenants continued in possession of the premises until the 1st of November 1851, when the defendants ousted them, and took and have since retained possession of the premises, claiming the right to do so for their own security.

Warren, and the plaintiff as his assignee, contended that the defendants' refusal to convey, and taking and retaining possession, and ouster of Warren's tenants, were acts inconsistent with the rights secured to Warren by the contract, and authorized him to consider the contract as rescinded; and the plaintiff in affirmance of such rescission brought this action.

The defendants contended that they were not bound to make the conveyance, until the interest was paid as above stated; and that they had the right to take possession as they did, without giving Warren the right to consider the contract as thereby rescinded; and denied that Warren had rescinded the contract, or that they had ever violated it.

The parties submitted the case above stated to the decision of the court.

*F. Chamberlin,* for the plaintiff, cited *Gillet* v. *Maynard,* 5 Johns. 85, 88; *Bank of Columbia* v. *Hagner,* 1 Pet. 466; *Holbrook* v. *Burt,* 22 Pick. 546.

*J. Wells,* for the defendants.

MERRICK, J. There is no evidence that the contract was ever rescinded. It is unnecessary to determine which of the parties

35 *

was right in the controversy which arose between them on the 1st of January 1850, as to the terms and conditions upon which, under the provisions of the contract, the plaintiff was entitled to demand a conveyance of the premises.  It is enough that their dispute related to the construction, and not to the existence or continued validity of the contract.   Warren denied his obligation, and refused to pay the money thus demanded of him; and for this reason, the defendants withheld the delivery of their deed to him.   But neither of the parties intended to repudiate, annul or rescind the contract.   On the contrary, both insisted upon its performance, and each of them pursued the course which was supposed to be most likely to enforce it according to the construction which they respectively put upon its provisions. This is abundantly apparent from their conduct.   On the one side, the defendants would not execute and deliver to Warren a deed of the estate, without previous payment of the interest they claimed to be due; but yet they did not offer or propose to restore the money they had already received of him, and they suffered him to remain, as during the whole of the preceding year he had been, in the quiet and undisturbed possession and enjoyment of the premises.   On the other hand, though there was no conveyance of the estate, and the deed of it was purposely withheld from him, Warren, without setting up any pretence of right or claim to it other than what he derived under the contract, continued for a long period of time, and until the lapse of many months after another and large instalment of the purchase money had become due and payable, to hold, control and treat it as his own.   These acts, and this course of proceeding, are utterly inconsistent with the supposition that the contract was rescinded, or that either of the parties thereto considered it as ceasing to be in force.

After the 1st of November 1851, when the defendants ousted the tenants of Warren, and thenceforward held the premises under their own exclusive control, it is undoubtedly true that he entertained a different opinion and preferred a different claim For it is agreed, that he regarded these acts as inconsistent with the rights secured to him by the contract, and that, believing

himself to be thereby authorized to consider it as wholly rescinded, he did accordingly ever afterwards treat it as disaffirmed and annulled. But he was then in no such condition as to be entitled to rescind it without the consent or acquiescence of the defendants. For nearly three years, he had been the undisturbed occupant of the estate, claiming and being allowed by the defendants to hold it solely under the provisions of the contract. In this way, he derived some advantage from its partial performance ; and thereby disabled himself from putting the defendants in the situation in which they were before the contract was made. He could not legally retain the advantage, and at the same time wholly invalidate the contract by his own act and at his own pleasure. He should have done whatever else of duty devolved on him, and then, for a breach of the con‧ tract by the defendants, if there were any, relief would have been afforded him in equity, by a decree for specific performance, or an action at law for the recovery of damages. *Hunt* v. *Silk*, 5 East, 449. 2 Parsons on Con. 192, *note*. It is not contended by the plaintiff that the defendants ever in fact assented to, or tacitly acquiesced in, the rescission of the contract. Instead of this, all their efforts were for the avowed purpose of enforcing it. It remains therefore a subsisting obligation upon the parties to it; and the defendants have a perfect right to retain the money which has been paid to them in conformity with its stipulations.

*Judgment for the defendants*